All right. Second case is Solis-Flores v. Garland. Mr. Winograd, do I have that right? Yes, Your Honor. Go ahead, sir. Thank you, Judge Diaz, and may it please the Court. Welcome back. Thank you. The primary issue in this case is whether my client's conviction for receipt of stolen property qualifies as a crime involving moral turpitude. The Court should hold that it does not for two independent reasons. First, to obtain a conviction, prosecutors need not establish that the defendant intended to permanently deprive the victim of property, as has long been required under board precedent or, at a minimum, should be required under board precedent. Second, at the time my client pleaded guilty in 2000, prosecutors could obtain a conviction based on a theory of constructive receipt for passively receiving benefits derived from the sale of stolen goods. Unless the Court prefers otherwise, I will address the arguments in that order, followed by a request for voluntary departure. Now, the government does not dispute that a person can be convicted for receipt of stolen property in Virginia, even if they did not intend to deprive the victim of property. The government instead contends that the board has never required such an intent for receipt of stolen property to qualify as a CIMT, but we believe the government is mistaken. In its 1944 decision in Matter of K, the board held, quote, where property is acquired without knowledge that it is stolen or without intent to deprive the rightful owner of his possession, the offense does not involve moral turpitude. Where does it say permanently? Can you read that again? Does it say permanently? I didn't think it did. They did not use the word permanently. However, in a subsequent unpublished decision that we cite and include a copy of with a reply brief, they do specifically say permanently. And also, in terms of the background, just a few months before Matter of K was issued, the Attorney General himself issued a decision called Matter of T, which upheld the permanent versus temporary distinction in the concept of theft. Because in theft, the person is actually taking it from the rightful owner. And you have to show that they did that culpably, with a bad state of mind. So they did it with intent to permanently deprive. But receipt of stolen goods is different. You're not the one who's taking it. You're receiving it from someone else who took it or from a third party, down the chain. And the moral, the culpability there, the government says, is taking it with dishonest intent. You know it's been stolen, and then you take it. So why isn't the government's argument about the culpable state of mind, it's different between those two things, and why isn't that okay? Well, that gets into our second argument about whether the board would have to, should include a permanent deprivation requirement. And we think joyriding provides the clearest example. So the board has long held that joyriding is not a CIMT, precisely because the defendant need not intend to permanently deprive the owner of the vehicle. So if a person who physically takes a car to go joyriding does not commit a CIMT, it follows that a person who receives a car simply to continue joyriding also does not commit a CIMT. Right. They didn't receive something they knew was stolen, because it wasn't stolen to begin with. And they didn't do it with a dishonest intent, because they intend to give it back. So joyriding is not a CIMT whether you receive it or you take it. Well, even in a case where the original thief did steal the car, and then lent it to someone whose intent was just to take it for a joyride, and then return it to the owner. Even in that case, we believe that person would be liable under Virginia law. Where is the dishonest intent if they take it thinking, you know, the rightful owner is missing their car. I'm going to take it for a spin and then give it back to them and correct this theft. We believe even that scenario, there's a difference between dishonest intent and intent to steal. Or as the Virginia cases refer to it, malo animo, which is a dishonest intent, and animus virandi, which is intent to steal. So we acknowledge, of course, that this crime has been interpreted to require malo animo or dishonest intent. But given that Virginia courts have held that it does not require an intent to permanently deprive, we think joyriding. I mean, joyriding itself, certainly a person who goes joyriding does not have an honest intent. They intend to use someone else's property without their permission, even if they intend to ultimately return it to the original owner. You're hypothesizing a case where someone receives a car they know was stolen, knowing that it was stolen, and then their intent is to return it to the rightful owner. And you're saying that's dishonest intent, that satisfies all four elements of the Virginia statute. In Baysmore, the Virginia Court of Appeals held that an intent to permanently deprive is not a required element of receipt of stolen property. Even as, of course, we know that the defendant must know that the original property was stolen. So the Virginia courts themselves have recognized this nuance in the statute. Is there any suggestion at all that they've ever applied this statute to not even Robin Hood? I was going to try to give an example of altruistic joyriding, right? I'm going to go around and find all the stolen cars and return them to their rightful owners. I was going to say Henry VIII. Joyriding is but one example. It could apply to any instance of property that is borrowed without the consent of the owner. But we don't need an actual case when we have an actual prosecution, when we have a decision of a Virginia appellate court stating as much. Do you have a decision of a Virginia appellate court applying it to altruistic conduct? I wouldn't classify joyriding as altruistic. No, no. The crucial fact that you're positing is intent to return it to the owner. That's what keeps it from being dishonest intent. I know it's stolen, but I intend to give it back. I think even in that case, there would be dishonest intent. I think using someone else's property for any period of time is dishonest, even if you ultimately intend to return it. That was especially so for something as valuable as a vehicle. We can see there are not specific joyriding prosecutions under the statute, although the facts in Bazemore did involve a defendant who was driving a vehicle without permission. And he claimed that the prosecutors failed to establish an intent to publicly deprive. And the Virginia Court of Appeals said, well, that's not required under the statute. Can I ask you a related question? Yes. So I guess I'm thinking of the daisy chain of joyriders problem. So let's just say that I see a really nice car on the street that I decide I want to take for a ride. And I take it for a ride. And then I'm a little tired. I'm done. And so then I see Judge Diaz. And I say, hey, this car is really great. You should take it for a spin, too. Do you have any situation? And I tell him, this is a car that I'm joyriding. Do you have any case where Virginia has ever prosecuted someone for receiving stolen property on a fact pattern that remotely resembles that? No. Considerably, we don't. But we are relying instead on the holding of Bazemore that's such that a permanent deprivation is not required. And this court has held in many cases.  Because Whitehead says the property was previously stolen by some person other than the accused. Couldn't Judge Diaz defend in that situation by saying Judge Heitens didn't steal it. He was joyriding. And there's a distinction between stealing something and joyriding in it. Certainly, Your Honor. And if the chain of events was joyrider to joyrider, then there wouldn't have been – there couldn't be knowledge that the property was stolen because joyriding does not require an intent to permanently deprive. I'm referring to a scenario where the property was originally stolen and then perhaps given to another person who intended to use it temporarily and then return it. It could be a piece of jewelry, for example. But again, we're relying on the conduct that could be criminalized as held by state appellate courts. And again, the government argues that the mere fact that theft is different from receipt of stolen property is enough for the board to treat them as different for immigration purposes. But we don't think that answers the ultimate question of whether there's a rational basis for the distinction. For example, assault and battery are technically, conceptually two separate crimes. But the board has always treated them identically for immigration purposes. And if the board was to impose a requirement for one but not the other, this court would not simply say, well, they're two different crimes. That's permissible. It would examine whether there is a rational basis for that distinction. Now, a separate reason – yes. What's odd about this joyriding hypothetical that we keep talking about is honestly the question I keep coming up with, why isn't joyriding a crime of moral turpitude? And I guess part of me, the answer might just be just because historically speaking, it's not been understood as a big deal. And maybe that has something to do with cars didn't used to have locks. And this was just the kind of thing people did in the 1930s. But why isn't there – I mean, why wouldn't it be rational for the board to say, look, yes, we have said that joyriding is not a crime of moral turpitude for historically contingent reasons involving automobiles and the tradition of jalopies and things like that. But we have always understood – to go back to what Judge Rushing said, when someone gives you something and you know the thing they're giving you is stolen, you're not supposed to take it. It's a morally culpable thing when someone says, do you want this thing? By the way, I just stole it. Well, the board has held that joyriding is not a CMT going on 80 years. And even at this point, if they were to reverse course, that could not – that holding could not be applied to retroactively. Oh, no, I totally agree with you. But you said they need a rational basis. Why isn't the rational basis is, look, as a matter of first-order principles, we may today decide that joyriding was a crime of moral turpitude. But historically speaking, it's always been understood to be a minor offense. We're going to continue to recognize the fact that it's a minor offense. But the fact that we do that does not mean that we're also going to say that taking something you know was stolen is not a crime of moral turpitude. Why isn't that a rational basis for taking it differently? For one, the board has never actually articulated that basis. I mean, we acknowledge that there have been many cases that don't refer to a deprivation requirement. But the board has never even spelled out its reasoning as much as Your Honor simply did. So we think at a minimum, the court – But they have. They've said repeatedly that when it comes to the receipt offense, the moral culpability is taking something from another person that you know is not legitimately theirs. They've said over and over that's the rationale in the crime of – in the receipt of stolen property. They've given us that reason. It's that taking something that you know was stolen is a morally culpable thing to do. I don't think it's as morally culpable if you intend to ultimately return it. And empirically, it's hard to measure, but one would think that receipt of stolen property is not as reprehensible or at least is either as or less reprehensible than taking property in the first place. So we think – I mean, at a minimum, we think the board should spell that out in more detail as the government itself originally requested in its motion to remand. So just to move to our entirely separate argument apart from the permanent deprivation requirement, which is that at the time my client pleaded guilty in 2000, a person could be convicted for constructively receiving stolen property, much like the defendant in the Whitehead case whose conviction was affirmed by the court of appeals in 2008. And then unanimously reversed by Virginia's highest court? Yes, it was reversed, but our argument – we recognize, of course, it was reversed. But in terms of the ultimate issue is did it establish a realistic probability that other defendants were previously convicted of engaging in similar conduct? So just to clarify our argument, our argument is not that courts are limited to considering decisions that had been issued at the time of conviction. Our argument is that when a conviction is affirmed by an intermediate appellate court, that decision creates a realistic probability both going forwards and backwards that other defendants were convicted of similar conduct. Now, if that decision of the intermediate appellate court is later reversed by the state's highest court, clearly there is no longer a realistic probability going forward that people could be convicted of similar conduct. But it does not – it doesn't magically erase the realistic probability that such conduct was prosecuted in the past. What is your best case for the – that is, shall we say, at minimum an unusual way to go about thinking about law. What is your best case for the proposition that that's what we do? Well, because this court has held in other cases that you look to decisions of state appellate courts to look at the conduct that has been prosecuted and could be prosecuted. Well, what's your best authority for the proposition that the decisions we look at include decisions that were unanimously reversed by the state's highest court? Your Honor, I don't believe any court has ever considered that. I think this is an open question under the categorical approach about what you do when you have a decision of an intermediate appellate court, which otherwise – I mean, it's undisputed that if the Supreme Court had never overruled the intermediate appellate court in Whitehead, that we could rely on it, even though it was entered after the conviction. But we just think as a practical matter, and the realistic probability test is a practical test, the fact that the decision was ultimately overruled by the state's highest court doesn't erase the realistic probability. And to be – Can I ask you a question? Yes. Voluntary departure, I want to make sure. Yes, yes. So let's assume for the sake of argument that we have jurisdiction to review it, and let's assume for the sake of argument that the BIA was wrong in consterting the regulation. Why isn't the remedy a remand to the BIA rather than a remand to the immigration judge to enter voluntary departure? Oh, well, Your Honor, simply as a practical matter, I believe this court can only remand to the BIA, and then the BIA would in turn remand to the immigration judge for further consideration. Can I ask you about that? Yes. I'm under the impression there's a federal regulation that says when you petition a court and seek a judicial remedy, you've made an election not to pursue voluntary departure. So the regulation says the voluntary departure order extinguishes. It no longer exists because your client made the choice, made the election to pursue the judicial remedy. So we have precedent saying we can't send it back for voluntary departure because the election has been made. The regulation Your Honor is referring to is only referring to voluntary departure orders that have been granted. Here the board did not grant voluntary departure. The IJ granted voluntary departure, and then you sought relief at the board, and then you sought relief here, and that's what the regulation is talking about. It says upon filing a petition for review or other judicial challenge, the grant of voluntary departure terminates automatically on the filing of a petition or other judicial challenge. And instead, that alternate order of removal, which the IJ entered here, that immediately takes effect. So the alternative order of removal has immediately taken effect, right? Yes, he's under an order of removal. But my point was there is no longer any grant of voluntary departure that can be extinguished by filing a petition for review because the board itself did not reinstate the period of voluntary departure. But doesn't Lee v. Holder, doesn't our case in that say that we can't send it back for a do-over on voluntary departure once you've sought judicial relief? I'm not familiar with that case. The government certainly hasn't cited it. I would be happy to address it in a 28-J letter. All right. Thank you, counsel. Ms. Pergolese, when you're ready. Nicely done. Thank you. Good morning, Your Honors, and may it please the court. Sarah Pergolese for the government. I'd like to start with the court's concern about the joyriding daisy-chained hypothetical or the good Samaritan joyrider. In really digging down on this issue and preparing for oral argument, I have only found one Virginia unpublished court of appeals case that even closely ties to this exact hypothetical. And in that case, the defendant lost. In that case, it's a – and I'm happy to file a 28-J about it because, candidly, I didn't cite it. So the defendant lost as in the defendant was convicted? The defendant was convicted. The defendant tried to raise a defense that he intended to return the stolen vehicle. And the appellate court found that the record did not support that defense at all. Of course, the court did not say that that defense did not exist, but it found that the applicant – or the defendant, excuse me, provided no proof that he intended to return the vehicle. What's the name of the case? It is – and again, I'll file a 28-J as well just so that the court has it in writing. But it's Jones v. Commonwealth, and it's 2017 Westlaw 586519. And again, it's an unpublished court of appeals case from 2017. In that case, the defendant was found in a car, driving a car that was reported to be stolen, and he was driving with a man who stole it. He alleged that the man just told him, hey, I have a car for the day. There's some term about joy-ridden cars that I don't have off the top of my head, but he said, I have this car for the day. Let's go on a drive. The police officer who apprehended the defendant and his passenger found them in an area where cars were typically dumped after being stolen. And the defendant essentially argued that he had no knowledge that the car was stolen and that he intended to return it. And the court of appeals found that there was no support for either of those claims. And so as Judge Rushing made point of in questioning the petitioner, a critical element of this Virginia receipt crime is that the defendant knew that the property was stolen. Not that the property was borrowed. Not that the property was taken impermanently, but that it was stolen. And Virginia law requires that theft is a permanent deprivation. And so... The best typo I've come up with, I assume you have seen Ferris Bueller's day off? Yes. So let's assume that the guys in the parking garage know that Ferris is joy-riding that day. And that they then in turn go joy-riding in the Ferrari that they know is a sell. So in your view, under Virginia law, those guys are not guilty of receipt of stolen property? Right. So I'm joy-riding the car and then I leave it in a parking garage. And a parking garage attendant who knows that I'm joy-riding in the car themselves decides to take the car for a joy-ride. In your view, that person is not guilty of receipt of stolen property because they don't know that I stole the car. From my understanding of Virginia law, which again is not very precise on this issue, that is the closest case... This is the closest case I've found. It's unpublished. It's from the court of appeals. There doesn't seem to be a lot of law about this in general. But yes, that's my understanding. If the state cannot prove that the vehicle was stolen... Oh, and that's another unpublished case. I found actually, if the state can't show the vehicle was stolen, that first joy-ride... If the first... If Ferris joy-rides, he hasn't stolen it. So implicit in what we've been saying, but I just want to make sure that when the Virginia Supreme Court says that the property was previously stolen, they mean taken with an intent to permanently deprive the owner of the property. And so if the first person is themself a joy-rider, that property was not in fact stolen within the Virginia law? Again, that's my understanding of the Virginia law, which is very sparse. It seems to both adhere in that stolen element, but also again, there's very little case law about this issue that I could find. But the Virginia law also seems to, in describing guilty knowledge, the knowledge requirement in general, that the property itself was stolen before the recipient takes control of it, they also call this guilty knowledge and sort of allied that knowledge that the property was stolen requirement, or even the first requirement that the property in fact was stolen, with the fourth element as Virginia law describes it, which is that dishonest intent. And I think Judge Rushing, you also mentioned that. I, again, could not find any Virginia law that clearly describes what dishonest intent means. But from surveying the state law, it seems to allie those two things. That dishonest intent really seems tied to the knowledge that the property itself was stolen. And then the choice, the act, the act as right as here of receiving that stolen property, knowing that it's stolen. Do we have to disagree with the Ninth Circuit's decision in Castillo-Cruz to rule in your favor? Yes and no. So Castillo-Cruz is imprecise in some ways that the court, in ways in which the court doesn't have to follow that reasoning by any means. In Castillo-Cruz, the Ninth Circuit focuses entirely on the board's case law regarding theft and doesn't seem to really grapple with or acknowledge the court's separate and distinct, excuse me, the board's separate and distinct long line of precedent that receipt crimes are turpitudinous for a different and distinct reason. As the Tenth Circuit in De Leon really parsed out the sort of faults in the Ninth Circuit's reasoning, the court can similarly find that the Ninth Circuit reasoning is not persuasive here. A couple, excuse me. I think as the court doesn't have any further questions, would I, Can I ask you about voluntary departure? Could I? The petitioner is correct that you do not cite 1240.26i, which we have taken to deprive us of jurisdiction to send a case back for redoing voluntary departure once the election has been made. What's your position on that? I also, candidly, am not familiar with the Lee case and would have to look at it, but I do want to note that that regulation was both the current, the regulation in effect when the board's decision was issued in this case and is not part of those enjoined rules. Right. Yeah, it's currently applicable and so yes, it would. It's been in effect since 2009 and it's not been enjoined. Right. So why didn't you cite it and what does it mean for us? It's a very good question, Your Honor. I should have cited it. It's definitely, it's another reason why the, essentially the conclusion in this case is foregone when it comes to voluntary departure and it can be a separate and alternative basis for the court to deny the petition on those grounds, that essentially that they can't, that the court can't remand for that basis. I candidly need to look at Lee because I'm not sure if it's just that the court cannot remand for reconsideration of voluntary departure alone. I don't know if granting the petition for review and remanding would sort of nullify the petition of the order that terminates the voluntary departure. It doesn't have anything to do with the CIMT ground. It just has to do with voluntary, just with can we send it back for a redo on voluntary departure and the regulation tells us that an election has to be made and once that hard choice, as we put it in Lee quoting Supreme Court and DADA, once that choice has been made, we can't give the petitioner a second bite of the apple. Again, just candidly not being aware, knowing the case closely enough, but I would agree certainly if that's. So it may well sound like we, it may well be that we don't get to this question, but I guess I noticed a rather conspicuous fact in your brief, which is that you don't, as I see it, defend the, let's assume that we somehow get through all of these procedural measures to the actual language of the regulations. I noticed that you don't actually defend the BIA's reading of the regulation, which is perhaps most charitably described as difficult to square with the text. Would you agree with that? Yeah, again, very candidly, we're not arguing the government's position is not that the immigration judge complied with this regulation. It's pretty clear cut or that the regulation doesn't say that the immigration judge shall inform the petitioner of these requirements for voluntary departure before granting it. And so our arguments are, yeah. On that front, and again, maybe we don't get there for the reason that Judge Rushing mentioned, but assuming that we were to, you sort of assert that we don't have jurisdiction, but then you quote, the statute says we have jurisdiction over errors of law. Why wouldn't that be an error of law? Again, assuming we get past the Judge Rushing point. And I think it was almost an effort of inclusiveness here, but yes. The challenges that we're discussing both in our briefs and today are certainly questions of law. So the court, of course, has jurisdiction over questions of law even in the voluntary departure process. And then the last question on that is the assertion to the extent you make one on the merits is you say he can't satisfy the elements of a due process claim, and he responds fairly enough in his reply brief that his blue brief doesn't even contain the words due process. So what authority is there for a proposition that it has to be a due process claim as opposed to you just violated your own regulations claim? Right. Well, I guess what I'm trying to square is what kind of argument is just the sole argument you violated the regulations. And under this court's precedent. You should have complied with the regulations. Well, under this court's precedent, an argument that a regulation wasn't complied with in Morgan, when you make that argument that a regulation was violated, you also have to show prejudice. That three-part test in Morgan applies even if you don't call it a due process argument. A challenge that the immigration judge violated the regulations which set out regulatory process. Is that an argument? It's hard for me to start. I'm sorry to interrupt. But is the prejudice argument one that we can consider given that the BIA never reached it? There is an exception to Chenery in that if, again, the conclusion is forgotten or obvious, then the court can decide something that the board didn't decide. And here the petitioner never even, again, never even alleged before the board that he was prejudiced by this error. He just whole-cloth says that an error occurred. And without tethering that argument to any sort of effect that error has, again, yes, if this goes back, if the court agreed that it was a clear violation of the regulation, the board would be able to decide prejudice. And here it would have to because the petitioner never alleged that the harm prejudiced him. But, yeah, if the court has no further questions, I would just really like to conclude briefly in, again, pointing to the very clear line of board precedent with respect to receipt crimes in that the board has said consistently that the turpitude-ness, the moral really reprehensible conduct, the thing that is turpitude-ness, is the knowing receipt of the stolen property. And, therefore, knowledge that the goods were stolen is essentially intent is inherent in that knowledge requirement. Knowledge is both a requirement when it comes to just as a matter of criminal law, as I understand it from first law, first year criminal law, knowledge obviously is one form of an intent when it comes to crimes  But in this receipt context, knowledge is also doing more work. Knowledge is showing an intent to control the property, to treat the property a certain way. That knowledge that the goods are stolen inheres a different kind of intent that is turpitude-ness and that the board has the authority as the adjudicator and interpreter of the term moral turpitude. The board has complete latitude to determine that this kind of crime is turpitude-ness and it has that complete latitude deserving of deference to determine that theft crimes and receipt crimes are different and should be treated differently in this context. And with that, if there are no further questions, I'll conclude. Thank you, Your Honor. Mr. Woodard, I'm glad you have some rebuttal. Thank you, Your Honor. Just to return to the receipt of stolen property issue first, Your Honor is correct that in Ferris Bueller's day off, assuming the garage attendants knew that Ferris and Cameron were joyriding, they themselves would not be liable under the statute. But I think you could imagine a different scenario where it would apply. So if a person steals a car and then allows a relative to borrow the car and the relative knows that the car was stolen and in the course of borrowing the car, they realize that the car actually belongs to someone they know. And then a few hours later, they decide, you know, I am going to return the car to the victim to the chagrin of the relative who stole the car. If they were to do that and they were to pull up to the victim's property, they could be arrested on the spot for receipt of stolen property because they knew at the time they took the car that it was stolen and they used the car and they did not intend to permanently deprive the victim of the car. And I guess to return to Judge Rushing's point, your view is there is a realistic possibility that person would be prosecuted for receipt of stolen property? Yes, because it satisfies all the elements of the crime as laid out by Virginia appellate courts. And under this court's precedent, that's all we need to satisfy the realistic probability test in our view. And also, Your Honor's question about the Ninth Circuit, we believe that this court would have to disagree with the Ninth Circuit in order to rule in the government's favor. We realize that there is somewhat of a lopsided split against us on this point, but we think this court would have to join the other side of the split. And we think at a minimum, a remand is warranted, as the government initially requested, for the board to further percolate before the board and really explain why the permanent deprivation requirement should apply in the theft context but not in the receipt of stolen property context. Turning to the voluntary departure issue, just on a quick reading of the regulation in question, again, our position is that if the board does not reinstate voluntary departure, there is no grant that could possibly terminate. But the regulation does say that the board shall advise the alien of the conditions provided in this paragraph in writing if it reinstates the immigration judge's grant to voluntary departure. So again, we'll address this more in a 28-J letter, but the regulation itself seems to contemplate that the revocation only applies if the board actually reinstates the period of voluntary departure, which it did not do in this case. And finally, just with – Now, that would have to – but given the government's complete failure to rely on that regulation, the only way we would have to – I mean, we probably could consider it either way, but the only way we would have to is if it's actually subject matter jurisdictional, right? Correct, and I can't conceive of any basis in which it would be – in which it would go to subject matter jurisdiction. You know, it's in a regulation, not a statute. And just with respect to prejudice, again, under Chenery, the board never considered prejudice, so it should go back. In matter of Gomero, which is the case we rely on in our briefs, the board remained it because the IJ failed to comply with the requirements and didn't consider prejudice at all. So we think, at a minimum, a remand – the court should remand to the board on the voluntary departure issue, and then the board can further determine what, if any, prejudice inquiry is required. All right. Court, is there any further questions? Thank you very much. Appreciate the counsel's arguments. We would typically come down and greet you, but we can't do that today. But thank you, nonetheless, for your able arguments. So we're going to take a short recess before moving on to our next two cases. This honorable court will take a brief recess.
judges: Albert Diaz, Allison J. Rushing, Toby J. Heytens